**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Feliberto Batista de la Paz, | ) | No. CV-05-3309-PHX-JAT |
| Petitioner, | ) ) | **ORDER** |
| vs. | ) ) | |
| D. Elliott, et al., | ) ) | |
| Respondents. | ) ) ) | |

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus ("Petition"), which was filed on October 5, 2005. On June 6, 2006, the Magistrate Judge issued a Report & Recommendation ("R & R") recommending that the Petition be dismissed with prejudice. Petitioner subsequently filed objections to the R & R.

**I. STANDARD OF REVIEW**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2000). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1126 (D.Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"). District courts are not required to conduct "any review at all . . . *of any issue* that is not the

subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("the court shall make a *de novo* determination of those portions of the [report and recommendation] to which objection is made."). Here, Petitioner filed objections on June 14, 2006, disputing the Magistrate Judge's R & R. Accordingly, pursuant to *Reyna-Tapia*, the Court will review the R & R (Doc. # 23) *de novo*.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The relevant factual and procedural background, for purposes of this Order, is summarized herein. On August 9, 1999, Petitioner, heading eastbound on U.S. Route 60, was pulled over by a state patrol officer for failing to obey a traffic control device. Having reasonable suspicion that Petitioner was transporting contraband, the officer asked to search Petitioner's vehicle, to which Petitioner consented.[1] Pursuant to the search of the vehicle, the officer discovered over one-hundred pounds of marijuana wrapped in large garbage bags. Petitioner was arrested and subsequently charged with transportation of marijuana for sale and possession of drug paraphernalia.[2]

After denying Petitioner's motion to suppress the evidence obtained from the search, the Gila County Superior Court ordered that the case proceed to trial by jury. Petitioner, however, failed to appear at trial and was convicted, in absentia, on March 29, 2000 of the transportation and possession charges. The court issued a bench warrant for Petitioner's arrest and postponed sentencing until Petitioner's apprehension. Having eluded authorities for over four years, Petitioner was finally apprehended in May 2004.

---

[1] Petitioner read aloud and signed a consent to search form provided by the officer. The form, itself, was written in Spanish, which is Petitioner's native language.

[2] Additionally, Petitioner was charged with use of narcotic drugs, use of dangerous drugs, and driving under the influence of drugs, but these charges were later dismissed by the state.

- 2 -

To represent him at sentencing, Petitioner retained attorney Homero Torralba.[3] On September 27, 2004, the court sentenced Petitioner to five years in prison for the transportation charge and one year in prison for the possession charge with both sentences running concurrently. Although Petitioner received notice of his right to seek review of the court's decision, neither a notice of appeal nor a notice of post-conviction relief was filed by Petitioner at any time before seeking federal habeas relief. Petitioner asserts the following claims in his habeas petition: (1) improper search conducted by arresting officer; (2) various errors and misrepresentations prior to and during trial; (3) ineffective assistance of counsel; and (4) admission of false evidence. On June 6, 2006, U.S. Magistrate Judge Jay R. Irwin issued a R & R recommending that Petitioner's habeas petition be dismissed with prejudice.

**III. DISCUSSION**

The R & R recommends that the Petition be dismissed with prejudice because Petitioner failed to exhaust his state remedies on the claims raised in his Petition, which, as a result of not complying with the procedures for state court review, are now procedurally defaulted.

**1. EXHAUSTION**

Generally, a state prisoner must exhaust all available state remedies before a federal court can consider the merits of a petition for habeas relief. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam). Grounded in principles of comity, "[t]he exhaustion requirement, now codified in the federal habeas statute, 28 U.S.C. §§ 2254(b) and (c), serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth*, 454 U.S. at 3.

To properly exhaust one's state court remedies, a petitioner must afford the state the opportunity to rule upon the merits of each federal constitutional claim by "fairly presenting"

---

[3]When Petitioner appeared for sentencing, however, he was still being represented by the attorney who represented him during the trial phase.

- 3 -

the claim to the state's highest court in a procedurally correct manner. *Castille*, 489 U.S. at 351; *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). In Arizona, however, with the exception of cases imposing a life sentence or the death penalty, a claim has been exhausted for federal habeas relief purposes if the Arizona Court of Appeals has ruled upon it. *Castillo v. McFadden*, 399 F.3d 993, 998 & n.3 (9th Cir. 2005); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *State v. Sandon*, 777 P.2d 220, 221 (Ariz. 1989) (per curiam).[4] Under Arizona law, a defendant convicted of an offense may either directly appeal the conviction or collaterally attack the conviction in a petition for post-conviction relief pursuant to Arizona Rule of Criminal Procedure 32. *Roettgen*, 33 F.3d at 38. Whichever avenue one decides to pursue, it is clear that a defendant must fairly present all federal constitutional claims to the state courts before raising such claims in a federal habeas corpus petition.

Here, as found by the Magistrate Judge in the R & R, Petitioner failed to present the federal constitutional claims now raised in his habeas petition to the state courts. In fact, no state appellate filing was ever made by Petitioner, either by way of a direct appeal or a Rule 32 petition for post-conviction relief. As a result, Petitioner has not properly exhausted his state court remedies, which ordinarily would require the Court to dismiss *without prejudice* his petition for habeas review.

**2. PROCEDURAL DEFAULT**

The Magistrate Judge in the R & R, however, dismissed Petitioner's habeas petition *with prejudice* because he concluded that Petitioner's unexhausted claims were procedurally defaulted. "[W]hen a petitioner at one time could have raised his constitutional claim in state court but did not and is now barred from doing so by a state rule of procedure, he has

---

[4]The Arizona Constitution provides that every defendant has an absolute right to appeal the offense for which that defendant was convicted. *Sandon*, 777 P.2d at 221 (citing Ariz. Const. art. 2, § 24). However, since it is a court of discretionary review, the Arizona Supreme Court is only required to hear appeals in life sentence or capital cases. *Id.* Thus, if a defendant's case does not fall within these two exceptions, the absolute right to appeal guaranteed by the constitution is only extended to appeals brought before the Arizona Court of Appeals. *Id.*

- 4 -

1  procedurally defaulted on his claim." *Tacho v. Martinez*, 862 F.2d 1376, 1378 (9th Cir.
2  1988). Absent a showing of "cause" for *and* "prejudice" from the procedural default, this
3  Court cannot review any constitutional claims to the extent they are procedurally defaulted
4  and, consequently, must dismiss the habeas petition with prejudice. *See Johnson v. Lewis*,
5  929 F.2d 460, 463 (9th Cir. 1991); *White v. Lewis*, 874 F.2d 599, 602-04 (9th Cir. 1989).
6  Conversely, if any state remedies were available at the time the federal habeas petition was
7  filed, the petition must also be dismissed, but without prejudice. *Johnson*, 929 F.2d at 463-
8  64; *White*, 874 F.2d at 602.

9       Under 28 U.S.C. § 2254(c), a claim will not be deemed defaulted if the petitioner "has
10 the right under the law of the State to raise, *by any available procedure*, the question
11 presented" in the habeas petition. (Emphasis added). In *Castille v. Peoples*, 489 U.S. 346,
12 350-51 (1989), the Supreme Court rejected a narrow construction of 28 U.S.C. § 2254(c),
13 especially if mandating "further state proceedings would be useless." *See also* 28 U.S.C. §
14 2254(b)(1)(B) ("An application for a writ of habeas corpus . . . shall not be granted unless
15 it appears that . . . (i) there is an absence of available State corrective process; or (ii)
16 circumstances exist that render such process ineffective to protect the rights of the
17 applicant."). Nonetheless, the Court stated that the provision in § 2254(c) was not without
18 meaning and held that it would remain applicable when a petitioner has failed to fairly
19 present his claims to a state court but may still do so under an existing state procedural rule.

20      Petitioner contends that the procedural default was not of his own doing, but rather
21 a result of his attorney's failure to file an appeal on his behalf, despite telling Petitioner that
22 he would do so. In Arizona, as stated *supra*, a defendant convicted of an offense is statutorily
23 afforded two avenues of post-conviction judicial review. Arizona Rule of Criminal Procedure
24 31 permits a defendant convicted of an offense to directly appeal the conviction by filing a
25 notice of appeal within twenty days of the entry of judgment and sentence. *See* Ariz. R. Crim.
26 P. 31.3. Alternatively, under Arizona Rule of Criminal Procedure 32, a defendant may seek
27 collateral review of his conviction by filing a notice of post-conviction relief with the court
28

- 5 -

1 in which his conviction was rendered, but must do so within ninety days of the entry of
2 judgement and sentence. *See* Ariz. R. Crim. P. 32.4.

3 Here, Petitioner did neither, but maintains that his failure to do so was a result of
4 being told by his attorney that an appeal or petition for post-conviction relief would be filed
5 on Petitioner's behalf. After eluding authorities for over four years, Petitioner was
6 apprehended in May 2004, at which time the sentencing phase of his case commenced.
7 Shortly thereafter, Petitioner's wife, Nereida Batista, who lives in Florida, contacted attorney
8 Homero Torralba about representing Petitioner during sentencing. Torralba agreed to the
9 representation and asked for a flat fee up-front of $10,000.00. Mrs. Batista stated that she did
10 not have that amount, but would try to get it somehow. On June 2, 2004, after pooling
11 together money from family members, Mrs. Batista wired $6,000.00 to Torralba. Torralba
12 assured Mrs. Batista that a signed retainer agreement was not necessary and that she could
13 pay the remaining $4,000.00 at a later date.[5]

14 On June 10, 2004, Torralba sent a letter to Petitioner informing Petitioner that he
15 would be representing Petitioner in his case. Petitioner alleges that he and Mrs. Batista were
16 of the understanding that Torralba's representation of Petitioner was not limited to
17 Petitioner's sentencing hearing, but would also include representation during the appellate
18 phase of the proceedings. Petitioner further alleges that he was told by Torralba that the fee
19 Torralba charged to Petitioner would include a direct appeal and/or a petition for post-
20 conviction relief. Mrs. Batista spoke with Torralba on the day on which Petitioner was
21 sentenced and he told her that he intended to appeal on Petitioner's behalf and that he would
22 keep her informed on the status of the appeal. However, in the days that followed, Torralba
23 never called Mrs. Batista to inform her on the status of the appeal, nor did Torralba return
24 any of her phone calls.

---

[5] According to Mrs. Batista, when she expressed concern about wiring $6,000.00 to Torralba without any formal agreement, Torralba told her "that would have to be a risk that [she] had to take."

- 6 -

In the meantime, Petitioner filed *pro se* a "Request for Preparation of Post-Conviction Relief Record."[6] After discovering this, Torralba called Mrs. Batista infuriated by the course of action Petitioner had taken, but assured her that he would fix the problem and get back to her. On October 14, 2004, Torralba filed a motion to withdraw as attorney of record, citing primarily Petitioner's filed request as his decision for withdrawal. In the motion, Torralba stated that he was retained to represent Petitioner during the sentencing phase of his case and "agreed to explore possible issues for appeal." Torralba's motion was granted on November 12, 2004.

In the months that followed, Torralba made no efforts to contact Mrs. Batista, despite the fact that she and other family members attempted to contact Torralba several times. In July 2005, Mrs. Batista wrote a complaint regarding Torralba to the State Bar of Arizona. Sometime thereafter, Petitioner submitted a subrogation receipt to the State Bar of Arizona requesting $6,000.00 from the Client Protection Fund. In processing and investigating the matter, a Senior Bar Counsel member requested from Torralba a copy of a written fee agreement. Torralba, however, admitted that he had neglected to provide Petitioner with such an agreement.[7] Recognizing that it would be inappropriate to keep Petitioner's funds, on August 18, 2006, Torralba made an offer to settle the matter by agreeing to refund Petitioner the $6,000.00 that Petitioner paid for Torralba's services if Petitioner agreed to drop the complaint against Torralba with the Client Protection Fund. Petitioner now claims the reason he failed to directly appeal or seek collateral review of his conviction was because he relied

---

[6] Petitioner contends that he filed the request for preparation of the post-conviction relief record because he had not heard anything back from Torralba. Petitioner, however, alleges that his poor understanding of English prevented him from taking any further action, such as filing the actual petition for post-conviction relief

[7] Torralba claims the closest thing to a written fee agreement was the letter Torralba sent to Petitioner on June 10, 2004, agreeing to represent Petitioner in his case. However, Torralba concedes that he does not believe the letter satisfies the requirement set forth in Arizona Rule of Professional Conduct 1.5(b).

- 7 -

on the assurances made by Torralba that he would pursue some form of post-conviction review on Petitioner's behalf.

Neither avenue of post-conviction review afforded under Arizona law bars dilatory claims if "[t]he defendant's failure to file a notice of post-conviction relief *of-right* or notice of appeal within the prescribed time was without fault on the defendant's part." Ariz. R. Crim. P. 32.1(f) (emphasis added); *see* Ariz. R. Crim. P. 31.3(b) ("A notice of delayed appeal shall be filed within 20 days after service of an order granting a delayed appeal under Rule 32.1(f)."); Ariz. R. Crim. P. 32.4(a) ("Any notice [of post-conviction relief] not timely filed may only raise claims pursuant to Rule 32.1(d), (e), (f), (g) or (h)."). As the comments to Rule 32.1(f) explain, the provision is intended to cover "the situation in which the defendant intended to appeal and though[t] timely appeal had been filed by his attorney when in reality it had not."[8] Even if Petitioner satisfied Rule 32.1(f), he could not bring a delayed petition for post-conviction relief because the proceeding would not be of-right.[9] However, no similar

---

[8] Rule 32.1(f) codifies *In re Acosta*, 400 P.2d 328 (Ariz. 1965), a decision rendered by the Arizona Supreme Court, and which is particularly analogous to the case at hand. In *Acosta*, no appeal was filed within the statutory time period after a prisoner's conviction. *Id.* at 328. The prisoner had a difficult time contacting his attorney during this period, but nevertheless believed an appeal was forthcoming because his attorney stated that he intended to appeal on the prisoner's behalf. *Id.* at 328, 330. After the prisoner's motion for delayed appeal was denied, he filed a petition for habeas corpus in the supreme court. *Id.* at 329. The court held that fundamental justice required the habeas petition to be treated as a motion for permission to file a delayed appeal. *Id.* at 330.

[9] Only those who have "pled guilty or no contest, admitted a probation violation, or whose probation was automatically violated based upon a plea of guilty or no contest" may file a Rule 32 *of-right* petition for post-conviction relief. Ariz. R. Crim. P. 32.1. Those individuals whose convictions do not fall within these categories may nevertheless bring a Rule 32 petition for post-conviction relief proceeding, but if it is untimely under Rule 32.4(a) they could not later invoke Rule 32.1(f) because it would not be of-right. Ariz. R. Crim. P. 32.1(f); *see also* Ariz. R. Crim. P. 32.1 cmt. ("Relief pursuant to subsection (f) will continue to be unavailable to all post-conviction relief proceedings not 'of-right.'").

1 restrictions exist under Rule 31.3(b), which would permit Petitioner to file a delayed direct appeal if he could satisfy Rule 32.1(f).[10]

Although the Court believes Petitioner's habeas petition should be dismissed, it disagrees with the R & R's recommendation of dismissal with prejudice. Petitioner has not raised his federal constitutional claims either on direct appeal or in a petition for post-conviction relief proceeding before Arizona courts. The R & R concluded, however, that Petitioner failed to raise his claims in a timely manner and is now procedurally barred from exhausting his state remedies. No Arizona court has concluded that Petitioner is procedurally barred from raising his unexhausted constitutional claims. *See Johnson v. Lewis*, 929 F.2d 460, 464 (9th Cir. 1991). An Arizona court *may* decide that Rule 32.1(f) does not bar consideration of Petitioner's unexhausted claims and proceed to grant him the relief he has requested in his habeas petition via a delayed appeal under Rule 31.3(b). *See Johnson*, 929 F.2d at 464. Thus, contrary to the R & R, Petitioner's claims are *not* procedurally barred.

## IV. CONCLUSION

Concerns with comity militate against this Court's consideration of Petitioner's unexhausted claims. *See Duckworth v. Serrano*, 454 U.S. 1, 4 (1981) ("[I]t would be unseemly in our dual system of government for the federal courts to upset a state-court conviction without affording to the state courts the opportunity to correct a constitutional violation."). Thus, because Petitioner has failed to exhaust his claims in state court, this Court dismisses Petitioner's habeas petition, but without prejudice since Petitioner's claims are not procedurally barred.

**IT IS ORDERED** that the Report and Recommendation is adopted, but only to the extent that it finds Petitioner has failed to exhaust his constitutional claims in state court.

---

[10]In *Moreno v. Gonzalez*, 962 P.2d 205, 207-08 (Ariz. 1998), the Arizona Supreme Court noted that although Rule 31 governs direct appeals from superior court and Rule 32 applies only to collateral attacks, Rule 32.1(f) is applicable to delayed direct appeals because it is cross-referenced in Rule 31.3(b).

- 9 -

1    **IT IS FURTHER ORDERED** that the Petition is dismissed <u>without prejudice</u>
2 because Petitioner has not exhausted or procedurally defaulted his claims and the Clerk of
3 the Court shall enter judgment accordingly.
4    DATED this 9th day of November, 2006.

/s/ James A. Teilborg
James A. Teilborg
United States District Judge